IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| B.D. STEPHENSON TRUCKING, L.L.C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 06-0343-WS-M |
| | ) |
| RIVERBROOKE CAPITAL | ) |
| PARTNERS, L.L.C., | ) |
| | ) |
| Defendant. | ) |

**ORDER**[1]

This matter is before the Court on defendant's Motion to Dismiss (doc. 4) and plaintiff's Motion for Leave to Amend Complaint (doc. 16).[2] Upon review of the parties' filings relating to that Motion to Dismiss, the undersigned entered an Order (doc. 12) on June 12, 2006, converting said Motion into a Motion for Summary Judgment on the grounds that defendant's arguments for dismissal rested exclusively on materials extrinsic to the Complaint. In accordance with applicable law, the parties were given notice of the conversion and a reasonable opportunity to supplement the record and to file additional memoranda of law. Both sides have availed themselves of this opportunity. (*See* docs. 14, 21, 30.) Defendant's converted Rule 56 Motion is now ripe for disposition, as is plaintiff's Motion to Amend. Plaintiff's request for a hearing on the Rule 56 motion is **denied**, inasmuch as the undersigned is of the opinion, after careful review of the court file, that oral argument would not provide substantial assistance in resolving the factual and legal issues presented. (*See* Local Rule 7.3.)

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

[2] The Motion for Leave to Amend Complaint included a request by plaintiff for leave to conduct limited discovery concerning its proposed claims. (Doc. 16, at ¶ 5.) That request was denied via Order (doc. 17) dated June 30, 2006.

**I.      Background.**[3]

On April 28, 2006, plaintiff B.D. Stephenson Trucking, LLC ("Stephenson") filed a Complaint in Baldwin County Circuit Court against defendant Riverbrooke Capital Partners, LLC ("Riverbrooke"), alleging state-law claims for injunctive relief, breach of contract, and "fraud/misrepresentation/suppression."  Riverbrooke removed the action to this District Court on June 2, 2006 on grounds of diversity of citizenship, inasmuch as Stephenson is a Mississippi limited liability company, Riverbrooke is a Georgia limited liability company, and the amount in dispute exceeds the $75,000 jurisdictional threshold.

Stephenson's claims arise from a contract entered into between Stephenson and Riverbrooke on November 16, 2005, pursuant to which Stephenson agreed to perform water and sewer infrastructure work for the Wilkins Creek Subdivision ("Wilkins Creek") in Baldwin County, Alabama.  (Stephenson Aff., at 1.)[4]  The Wilkins Creek project was a development of Riverbrooke and Wiley M. Platt ("Platt"), who was not named as a defendant in the original Complaint.  (*Id.*)  The contract consisted of a written proposal dated November 14, 2005, in which Stephenson bid to furnish equipment and labor to complete a sewer and water system at the subdivision in exchange for payment of $277,968.  (Complaint, at Exh. A.)  Riverbrooke agreed to the proposal in writing on November 16, 2005.  (*Id.*)

---

[3]     The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004); *Johnson v. Governor of State of Fla.*, 405 F.3d 1214, 1217 (11th Cir. 2005).  Thus, plaintiff's evidence is taken as true and all justifiable inferences are drawn in its favor.

[4]     In support of its position, plaintiff submits a document styled "Affidavit of Brian Stephenson and Dawn Stephenson."  (Doc. 21, at Exh. A.)  In addition to being unorthodox, the joint-affiant format of this exhibit is confusing, because both affiants aver the truth of statements that obviously do not apply to them individually, and use the term "we" in lieu of identifying which of them actually participated in various events and conversations that apparently involved only one or the other of them.  A far more appropriate stratagem would have been to submit individual-specific affidavits tailored to the particular observations, actions and first-hand knowledge of a single affiant, rather than lumping them together in an undifferentiated mass. Nonetheless, because defendant has not moved to strike the Stephenson Affidavit for these procedural irregularities, and because its contents can likely be reduced to admissible form at trial, the undersigned will consider it here.

At the time that Stephenson and Riverbrooke entered into the contract, it is universally agreed that Stephenson did not possess an Alabama general contractor's license issued by the Alabama Licensing Board for General Contractors. (Coleman Aff., ¶ 5; Rogers Aff., ¶ 3; Stephenson Aff., at 1.) Stephenson's evidence is that the company was told, by an unidentified source, that it "could operate under the general contractor's license of Platt and Riverbrooke in mobilizing [its] equipment to Baldwin County, to place it on the Wilkins Creek job site in anticipation of obtaining [its] license and subsequent delivery of materials." (Stephenson Aff., at 1.) In reliance on that reassurance of unidentified origin, Stephenson moved its equipment to the site and began the paperwork process for an "Alabama general subcontractor's license," only to be informed by Platt and Riverbrooke before submission of said paperwork that Riverbrooke would not honor the contract because they had located a vendor who was willing to perform the work for a lower price. (*Id.* at 1-2.) Upon retrieving its equipment from the Wilkins Creek site, Stephenson discovered that such equipment had been used without its knowledge or consent. (*Id.* at 2.) Stephenson was never compensated for the use of its equipment, nor was it permitted to perform under the terms of the contract. (*Id.*) There is no allegation that Stephenson failed to perform or otherwise breached its contractual obligations to Riverbrooke at any time; rather, it is uncontroverted for purposes of this motion that Riverbrooke entered into a contract with Stephenson then unilaterally refused to honor that agreement when a cheaper vendor was located.

This litigation was initiated to decide whether Riverbrooke must compensate Stephenson for its repudiation of the contract. In seeking dismissal of this action, Riverbrooke's sole contention is that the contract was rendered void and unenforceable by Stephenson's failure to obtain an Alabama general contractor's license, and that plaintiff's tort claims fail because a contractor cannot circumvent Alabama's licensure requirement by recasting his barred contract claims as tort claims resting on facts pertaining to the breach of contract. Plaintiff also seeks to amend its complaint to name Platt as an additional party defendant and to interpose additional claims for relief on theories of unjust enrichment/quantum meruit, equitable lien and constructive trust, and perfection of a mechanic's or materialman's lien. (*See* doc. 16.)

**II.     Analysis of Summary Judgment Motion.**

   **A.     *Summary Judgment Standard.***

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

   **B.     *Alabama's Contractor Licensure Requirement.***

As a matter of Alabama statute, "[a]ny person, firm, or corporation not being duly authorized who shall engage in the business of general contracting in this state ... shall be deemed guilty of a Class A misdemeanor." Ala. Code § 34-8-6(a). Alabama courts have taken this principle one step further, declaring that "express or implied contracts with unlicensed 'general contractors' [are] unenforceable as a violation of public policy. Such contracts are illegal and unenforceable by the unlicensed 'general contractor'." *Med Plus Properties v. Colcock Const. Group, Inc.*, 628 So.2d 370, 374 (Ala. 1993) (citations omitted); *see also Architectural Graphics and Const. Services, Inc. v. Pittman*, 417 So.2d 574, 576 (Ala. 1982) ("a contract by an unlicensed 'general contractor,' as defined in § 34-8-1, is null and void as a violation of that public policy. Such contracts are illegal and unenforceable by the unlicensed general contractor."). Moreover, "an unlicensed contractor will not be afforded the privileges

that come from the statute because of its association with a licensed contractor ...; because of its obtaining a license *subsequent* to the execution of the contract ...; or because of the equally inequitable conduct of the other contracting party." *Med Plus*, 628 So.2d at 374-75 (citations omitted); *see also Thomas Learning Center, Inc. v. McGuirk*, 766 So.2d 161, 170 (Ala. Civ. App. 1998) (opining that unlicensed contractor may not argue reliance on another person in determining licensure requirements in Alabama).[5] Alabama courts make no apologies for the sometimes draconian consequences of this inflexible rule, but instead explain that this licensing statute is a "penal one, and harsh results sometimes flow from the construction of a penal statute." *Architectural Graphics*, 417 So.2d at 577 (quoting *Hawkins v. League*, 398 So.2d 232, 237 (Ala. 1981)).

In light of the foregoing principles, a defendant is entitled to summary judgment in an action by an unlicensed plaintiff to enforce a contract if it establishes that (a) the plaintiff was unlicensed, (b) the contracted work was of the type covered by the licensure statute, and (c) the cost of the work was $50,000 or more. *See Triple D Trucking, Inc. v. American Petroleum Equipment and Const.*, 865 So.2d 1234, 1237 (Ala.Civ.App. 2003); *Central Alabama Home Health Services, Inc. v. Eubank*, 790 So.2d 258, 260 (Ala.Civ.App. 2000) ("In order to demonstrate entitlement to a judgment as a matter of law on a no licensure defense, a party must prove (with respect to an alleged general contractor): (1) that the alleged contractor was unlicensed; (2) that the contracted work was of the type covered by the licensure statute; and (3) that the 'cost' of the work was [$50,000] or more.").

### C.     *Application of Licensure Requirement to Stephenson.*

Here, there is no question that Stephenson was unlicensed and that the cost of the work exceeded $50,000; therefore, Riverbrooke is entitled to summary judgment if the contracted

---

[5] This rule embodies the more general notion that "if the purpose of a licensing statute is the regulation of the business licensed and not merely the collection of revenue, a person not licensed cannot enforce a contract for services rendered within the scope of the regulated business." *Tucker v. Walker*, 308 So.2d 245, 247 (Ala. 1975). Alabama law is quite clear that "§ 34-8-1, *et seq.*, Ala.Code 1975, is not a law enacted solely for revenue purposes, but rather is regulatory legislation designed to protect the public against incompetent contractors and to assure properly built structures which are free from defects and dangers to the public." *Architectural Graphics*, 417 So.2d at 576.

work is of the type implicated by the licensure statute.  The statute defines a "general contractor" as one who, for a fixed payment, "undertakes to construct or superintend or engage in the construction, alteration, maintenance, repair, rehabilitation, remediation, reclamation, or demolition of any building, highway, sewer, structure, site work, grading, paving or project or any improvement in the State of Alabama where the cost of the undertaking is fifty thousand dollars ($50,000) or more."  Ala. Code § 34-8-1(a).  However, the statute also defines a "subcontractor" as one "who performs work under contract to a general contractor."  Ala. Code § 34-8-1(c).  The licensure rules are somewhat more relaxed for subcontractors than for general contractors.  While general contractors must be licensed at the time of entering into a contract, "[a] subcontractor is not required to be licensed at the time a project is bid, but must be licensed with the board prior to beginning work on the project."  Ala. Code § 34-8-7(c)(5).  Thus, summary judgment in this case hinges on the following two questions: (a) was Stephenson a subcontractor on the Wilkins Creek project; and (b) if so, had it begun work on the project before Riverbrooke backed out of the contract.  If the first question is answered affirmatively and the second is answered in the negative, then § 34-8-7(c)(5) would remove Riverbrooke's no-licensure defense from this case, precluding summary judgment on that basis.

      In a slightly different context, a federal district court applying Alabama law explained that, to determine whether a plaintiff has engaged in the work of a "general contractor" as defined in § 34-8-1, Alabama courts consider such factors as the intent of the parties, the amount of control exerted by the plaintiff, and the type of work performed by the plaintiff.  *See Allstate Ins. Co. v. Hugh Cole Builder, Inc.*, 127 F. Supp.2d 1235, 1238 (M.D. Ala. 2001) (collecting cases and applying Alabama law); *see also Ipsco Steel (Alabama) Inc. v. Kvaerner U.S. Inc.*, 2005 WL 1244929 (S.D. Ala. May 25, 2005) (adopting the *Allstate* formulation of relevant factors for assessing whether party has engaged in "general contractor" work).  Although no Alabama decision appears to have specifically delineated the circumstances under which a contractor may properly be classified as a "subcontractor" under § 34-8-1(c), the *Allstate* factors appear equally helpful and relevant in that context, and will therefore be applied by this Court.

      The record presented at this time raises at least a factual question as to whether Stephenson was a subcontractor on the Wilkins Creek project.  In particular, Stephenson was hired to perform sewer and water system work on a residential subdivision project, such that

Stephenson's work would be a small portion of a much larger construction enterprise. The Stephenson Affidavit suggests that Platt and/or Riverbrooke would serve as general contractor on the project. More importantly, the Stephenson Affidavit reflects that Stephenson was invited to "operate under the general contractor's license of Platt and Riverbrooke," which lends strong support to the proposition that the parties contemplated that Platt and Riverbrooke would in fact be acting as general contractors on the project, with Stephenson assuming a subordinate role under Platt and Riverbrooke's supervision, direction and control.[6] Without more information about the relations between Stephenson and Riverbrooke/Platt, their intended working relationship, the amount of control afforded to Stephenson in working on the project, and the like, the Court cannot conclude as a matter of law that Stephenson was not hired to "perform[] work under contract to a general contractor" for purposes of § 34-8-1(c). There is thus a genuine issue of fact at this time as to whether Stephenson was acting as a subcontractor on the Wilkins Creek site.[7]

Because the Court cannot foreclose the possibility that Stephenson was a subcontractor on the Wilkins Creek project for § 34-8-1 purposes, Stephenson may be able to enforce the contract even though it was not licensed, provided that it never actually began work on the project. *See* Ala. Code § 34-8-7(c)(5) (explaining that subcontractors need not be licensed when

---

[6] Indeed, Riverbrooke appears to acknowledge in its reply brief that Stephenson was to be a subcontractor on the project, as it references "[t]he fact that Stephenson was to perform work as a subcontractor at the Wilkins Creek project." (Reply Brief (doc. 30), at 2 n.1.)

[7] *See generally Central Alabama Home Health*, 790 So.2d at 261-62 (trial court properly denied defendant's motion for judgment as a matter of law where jury question existed as to whether plaintiff's work required licensure, where jury could have concluded that plaintiff was not personally responsible for ensuring completion of projects and that plaintiff's work was subject to the ultimate control and revision of defendant, which did not hesitate to exercise that control); *Med Plus*, 628 So.2d at 375 (denying defendant's motion for JNOV where there was substantial evidence from which factfinder could have concluded that construction contract in question was not a creative scheme to avoid statutory licensing requirements by allowing unlicensed contractor to superintend construction project); *Herbert v. Birmingham-Jefferson Civic Center Authority*, 694 F.2d 240, 242 (11th Cir. 1982) (finding genuine issue of material fact as to whether plaintiff was engaged in general contracting services where parties described plaintiff's role as consultant and type of work involved may not have been general contracting).

a project is bid, but must be licensed before they begin work).[8] The Stephenson Affidavit, which must be accepted as true on summary judgment, reflects that Stephenson's only activities in relation to the Wilkins Creek project were to mobilize its equipment to Baldwin County and place it on the job site "in anticipation of obtaining [its] license and subsequent delivery of materials ..., so that [the] company could begin doing work in accordance with the contract." (Stephenson Aff., at 1.)[9] Although Riverbrooke contends that the act of mobilizing equipment to a job site is sufficient to constitute "beginning work on the project" for purposes of § 34-8-7(c)(5), it cites no authority and offers no reasoning in support of such a proposition. Plain reading of the statutory language supports a contrary conclusion. The mere relocation of equipment to a job site, unaccompanied by any substantive activity at that job site, is mere preparation that cannot reasonably be construed as "beginning work on the project" for purposes of § 34-8-7(c)(5). In short, then, if Stephenson is found to be a subcontractor on the project (as Riverbrooke apparently admits it was), a reasonable factfinder could conclude on this record that it had not yet begun work on the Wilkins Creek project and that it therefore was not required to

---

[8] Defendant's rebuttal to this statutory provision is simply to overlook it. In this regard, Riverbrooke represents to the Court that "§ 34-8-7(c) provides that subcontractors 'shall comply with all the provisions of this chapter as specified for general contractors.'" (Reply Brief, at 2 n.1.) This argument ignores the qualifier "except as follows," which appears immediately after the quoted passage of the statute, and likewise ignores the enumerated statutory exception that subcontractors (unlike general contractors) need not be licensed when a project is bid, but only when they begin work. Riverbrooke thus misstates the meaning and import of § 34-8-7(c), as it applies to the instant dispute.

[9] Riverbrooke counters this testimony by referencing language in the Complaint that "Stephenson began the limited operations which it could conduct while awaiting materials to be delivered by Riverbrooke." (Complaint, ¶ 8.) This excerpt does not entitle Riverbrooke to summary judgment on the § 34-8-7(c)(5) issue for two reasons. First, the quoted language is vague and does not unambiguously assert that Stephenson had commenced work on the project. Indeed, a perfectly reasonable construction of that language would equate the phrase "began the limited operations which it could conduct" in the Complaint with the statement in the Stephenson Affidavit that the company had merely moved its equipment to the job site. There is no inherent conflict between the two statements. Second, any discrepancy between the Complaint and the Stephenson Affidavit creates, at most, a question of fact. Defendant has not suggested that the Stephenson Affidavit is a sham, so the Court need not and will not *sua sponte* explore whether it would pass muster in such an analysis.

be licensed at the time of Riverbrooke's repudiation of the contract.  That finding, in turn, would eliminate Riverbrooke's no-licensure defense.  For these reasons, defendant is not entitled to judgment as a matter of law on that defense.

>        D.        *Defendant's Other Summary Judgment Arguments.*

Although the bulk of Riverbrooke's contentions pertain to the contract claim, it also seeks summary judgment on the injunctive relief and fraud/suppression claims.  As to the injunctive claim, defendant's position is that such claim must be dismissed because the contract is unenforceable.  (Defendant's Brief (doc. 5), at 4 n.1.)  The Court having determined that the contract is not void as a matter of law, defendant is not entitled to summary judgment on the injunctive claim, either.  Similarly, Riverbrooke argues that the fraud claim is barred as an improper attempt to circumvent the licensure requirement.  *See White v. Miller*, 718 So.2d 88, 90 (Ala.Civ.App. 1998) ("the contractor cannot circumvent the licensing statute by asserting claims for fraud and deceit when the facts surrounding his claims are grounded in contract").  Because the Court cannot find as a matter of law that Stephenson violated the licensure provisions found at § 34-8-1 *et seq.*, the reasoning of *White* is inapplicable and Riverbrooke is not entitled to summary judgment on the fraud claim.

Finally, with regard to the fraudulent suppression cause of action, Riverbrooke points out that the elements of such a claim are "(1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury."  *Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C.*, 932 So.2d 883, 891 (Ala. 2005) (citation omitted).  Defendant's position is that it owed no such duty to plaintiff because there was no confidential relationship between the parties, such that a fraudulent suppression claim is not cognizable here.  But the absence of a confidential relationship is not necessarily fatal to Stephenson's fraudulent suppression claim.  Although defendant is correct that in arm's-length commercial transactions there is no general duty to disclose, its argument oversimplifies the law by disregarding an important caveat.  Indeed, defendant overlooks the corollary that, while "parties have no general obligation to disclose, ... each has an affirmative duty to respond 'truthfully and accurately' to direct questions from the other. ... The parties decide what information they need, and the law protects their rights to receive it."  *Freightliner*, 932 So.2d at 892 (citations omitted).  On this fragmentary

record, the undersigned cannot discern whether Stephenson may have posed direct questions to Riverbrooke during the bidding process that might have given rise to a duty on Riverbrooke's part to respond truthfully and accurately. If that duty existed, and if Riverbrooke breached that duty by failing to respond truthfully and accurately, then the fraudulent suppression claim could survive. As such, it would be premature and unjustified to dismiss plaintiff's fraudulent suppression claim without some development via the discovery process of facts concerning the parties' communications prior to and at the time of contract formation.

### III.   Analysis of Motion for Leave to Amend Complaint.

After the Motion to Dismiss was filed by Riverbrooke, Stephenson filed a Motion for Leave to Amend Complaint (doc. 16) in which it sought to add an additional defendant, Wiley M. Platt, and to allege new claims for unjust enrichment/quantum meruit, equitable lien and constructive trust, and materialman's lien. Riverbrooke has filed objections to the proposed amendment. (*See* doc. 31.) Despite being given an opportunity to do so, Stephenson has elected not to respond to or rebut Riverbrooke's objections to the proposed amendment.[10]

#### A.   *Legal Standard for Amendment of Complaint.*

The Motion for Leave to Amend is governed by Rule 15(a), Fed.R.Civ.P., which provides that leave to amend pleadings "shall be freely given when justice so requires." *Id.*; *see also Spanish Broadcasting System of Fla., Inc. v. Clear Channel Communications, Inc.*, 376 F.3d 1065, 1077 (11th Cir. 2004) ("leave to amend must be granted absent a specific, significant reason for denial"). Such leave should be "freely given," as required by the rule, except in the presence of countervailing factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

---

[10] The Court is under no obligation to formulate, present, and evaluate arguments that plaintiff could have made, but has elected not to make. *See Pinto v. Universidad De Puerto Rico*, 895 F.2d 18, 19 (1st Cir. 1990) ("the court is under no duty to exercise imagination and conjure what a plaintiff might have alleged, but did not, and do counsel's work for him or her"); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it"); *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp.2d 1228, 1236 (M.D. Ala. 2000) ("[i]t is not for the court to manufacture arguments on Plaintiff's behalf").

prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *McKinley v. Kaplan*, 177 F.3d 1253, 1258 (11th Cir. 1999) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)); *see also Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213, 1218 (11th Cir. 2004) (explaining that despite "freely given" language of Rule 15(a), leave to amend may be denied on such grounds as undue delay, undue prejudice, and futility). Although whether to grant leave to amend rests in the district court's discretion, Rule 15(a) "severely restricts" that discretion. *Sibley v. Lando*, 437 F.3d 1067, 1073 (11th Cir. 2005). Indeed, denying leave to amend is an abuse of discretion in the absence of a showing of one or more of the *Foman* factors. *See, e.g., Bryant v. Dupree*, 252 F.3d 1161, 1163-64 (11th Cir. 2001) (lower court should have permitted amendment to complaint where there was no evidence of prejudice or undue delay); *McKinley*, 177 F.3d at 1258 (opining that district court abused discretion in refusing to permit amendment where opposing party would not be prejudiced); *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988) ("unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial").

### B.     Application of Standard.

Defendant proffers four objections to the proposed amendment, all of which are focused exclusively on the futility of amendment factor. The law of this circuit is clear that "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1263 (11th Cir. 2004). "When a district court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail." *St. Charles Foods, Inc. v. America's Favorite Chicken Co.*, 198 F.3d 815, 822-23 (11th Cir. 1999). The futility threshold is akin to that for a motion to dismiss; thus, if the amended complaint could not survive Rule 12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied. *See, e.g., Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (denial of leave to amend justified by futility when "complaint as amended is still subject to dismissal"); *Florida Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996) (amendment is futile if cause of action asserted therein could not withstand motion to dismiss); *Amick v. BM & KM, Inc.*, 275 F. Supp.2d 1378, 1381 (N.D. Ga. 2003) ("In the Eleventh Circuit,

a proposed amendment is futile when the allegations of the proffered complaint would be unable to withstand a motion to dismiss.").

Riverbrooke's first futility objection concerns the proposed claim for unjust enrichment / quantum meruit, in which Stephenson maintains that Riverbrooke and Platt were unjustly enriched by using Stephenson's equipment on the Wilkins Creek job site without authorization from or compensation to Stephenson.  Riverbrooke contends that this cause of action is futile because Stephenson was an unlicensed general contractor, and because the quantum meruit claim is an attempt to circumvent the licensing statute requirements.  This argument cannot prevail.  As an initial matter, the Court has already explained, *supra*, that there are genuine questions of fact as to whether Stephenson was required to have a license at the time of the events referenced in the pleadings.  Therefore, Stephenson's lack of a license is not necessarily fatal to this theory of recovery.  Furthermore, Riverbrooke's argument suggests that the quantum meruit claim is intertwined with, and an attempt to recast, the breach of contract claim.  It is not.  The breach of contract claim hinges on Riverbrooke and Platt's repudiation of written and oral contracts with Stephenson to perform certain water and sewer work on a residential subdivision project.  By contrast, the quantum meruit claim relates exclusively to Riverbrooke and Platt's alleged unauthorized use of Stephenson's equipment.  Because the facts underlying the quantum meruit claim are not intertwined with, but are instead divorced from, those animating the contract claim, Stephenson's licensure status appears irrelevant to that cause of action.  This objection is not meritorious.

Next, Riverbrooke objects to the proposed claim for equitable lien and constructive trust, in which Stephenson contends that Riverbrooke and Platt's unauthorized use of its equipment conveyed a benefit to the real property of the subdivision project, warranting imposition of an equitable lien or constructive trust on such property.  Riverbrooke objects that Alabama law does not recognize equitable liens in this context.  This appears to be a correct statement of Alabama law, and is in any event one which plaintiff has not challenged.  *See McCleskey v. Finney*, 130 So.2d 183, 185 (Ala. 1961) ("Our cases are uniform in holding that a mechanic's or materialman's lien is not allowable in equity independently of statute ...."); *Covington County Bank v. R.J. Allen & Associates, Inc.*, 462 F. Supp. 413, 422 (M.D. Ala. 1977) (similar).  Accordingly, the Court will sustain Riverbrooke's objection to the equitable lien claim.  That

said, the Court will not strike this cause of action in its entirety, as Riverbrooke has not argued that plaintiff cannot proceed on a constructive trust theory. *See generally Hanner v. Metro Bank and Protective Life Ins. Co.*, --- So.2d ----, 2006 WL 2642112, *8 (Ala. Sept. 15, 2006) (observing that constructive trusts are creations of equity that operate to prevent unjust enrichment, where it would be inequitable to allow property to be retained by holder). There may be viable legal defenses that preclude recovery on a constructive trust theory here, but the Court will not shoulder the burden of articulating Riverbrooke's arguments for it.

Riverbrooke also contests plaintiff's cause of action for perfection of a lien pursuant to Alabama Code § 35-11-210 *et seq.* On this point, defendant's objections are twofold. First, Riverbrooke claims that the statutory lien claim is time-barred because it was not brought within six months. Alabama law does impose such a six-month deadline for creation of an enforceable materialman's lien. *See* Ala. Code § 35-11-215 (stating that lien shall be deemed lost unless notice is filed within six months); *Government Street Lumber Co. v. Baldwin County Sav. & Loan Ass'n*, 532 So.2d 645, 646 (Ala.Civ.App. 1988) (to create an enforceable lien, mechanic or materialman "not only had to file its lien within six months of the last delivery date, but it also had to commence suit within six months after the maturity of the indebtedness"). Nonetheless, the proposed Amended Complaint requests that this six-month deadline be tolled because of the alleged misrepresentations of Riverbrooke and Platt. Riverbrooke neglects to respond to the tolling issue, and neither side has presented the Court with any authority bearing on that question. Because Riverbrooke has made no pretense of rebutting Stephenson's tolling argument, the Court cannot find that this cause of action is necessarily time-barred and therefore futile. Second, Riverbrooke points out that a contractor in violation of the license requirement is not permitted to recover under a mechanic's or materialman's lien theory. *See White*, 718 So.2d at 89 (where contractor was unlicensed, work was of type covered by statute, and cost exceeded then-statutory floor, contractor could not recover under contract, quasi-contract, or in action to establish mechanic's lien).[11] The Court's previous finding that there are genuine issues as to

---

[11] In making this argument, defendant purports to quote extensively from *J&M Industries, Inc. v. Huguley Oil Company, Inc.*, 546 So.2d 367 (Ala. 1989). While *J&M* generally stands for the proposition that contractors in violation of the statutory licensing scheme cannot enforce liens under Alabama law, the quoted passage appears nowhere in the text of the *J&M*

-13-

whether Stephenson is in violation of the licensing requirement precludes a determination that the proposed materialman's lien claim is futile on that basis.

Fourth and finally, Riverbrooke asserts that the proposed fraud claims against proposed defendant Platt "fail for the same reasons articulated in Riverbrooke's summary judgment briefs." (Objection, at 4.)  The Court having already considered and rejected Riverbrooke's arguments on this point in ruling on the Rule 56 motion, the fraud claims against Platt will not be denied as futile.

### IV.     Conclusion.

For all of the foregoing reasons, defendant Riverbrooke Capital Partners, LLC's Motion to Dismiss (doc. 4), which has been reclassified as a Motion for Summary Judgment, is **denied**. Plaintiff B.D. Stephenson Trucking, LLC's Motion for Leave to Amend Complaint (doc. 16) is **granted**, with the caveat that leave to amend is **denied** as to the proposed equitable lien claim on futility grounds.  Pursuant to Section II.A.6. of this District Court's Administrative Procedures for Filing, Signing and Verifying Documents by Electronic Means, plaintiff is **ordered**, on or before **October 2, 2006**, to file its First Amended Complaint in the form previously presented as an Exhibit to the Motion for Leave to Amend, with redaction of the disallowed equitable lien claim.  Defendants' responsive pleadings must be filed in accordance with the time frame specified by Rule 12(b), Fed.R.Civ.P.

DONE and ORDERED this 25th day of September, 2006.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

opinion, but is instead found in a reporter's headnote to the case.  Greater care should be taken to ensure that passages presented as quotations from the Alabama Supreme Court actually are found in the body of an Alabama Supreme Court opinion.